ZEHMER, Judge.
Eddie Bass, claimant, appeals a workers’ compensation order that denied his claim for wage loss benefits on the ground that section 440.15(3)(b)3.a., Florida Statutes (1987),[1] terminated his right to such benefits because there was a 2-year period following MMI during which wage loss benefits were not payable during at least 3 consecutive months. Because the record does not contain competent, substantial evidence that would support a finding that claimant was informed of his duty to perform a work search as a prerequisite to entitlement to wage loss benefits, the judge erred in applying section 440.-15(3)(b)3.a., Florida Statutes (1987), and denying claimant’s claim for wage loss benefits. Thus, we reverse the appealed order.
The order provides in pertinent part:
1. The claimant, by stipulation, reached maximum medical improvement March 15, 1988. No evidence is presented that either wage loss benefits were in fact paid during the two years following March 15, 1988 or that in fact wage loss benefits were payable. The only evidence is that the claimant received wage loss benefits from June of 1990. This is clearly outside the two years. During the two years in question, the claimant’s testimony by deposition is that he was working or in jail. I find, therefore, the claimant’s further claim for wage loss benefits is barred by the applicable statute in that the employee did not have three consecutive payable months of wage loss during the two years following the date of maximum medical improvement.
It is therefore Ordered and Adjudged: That the claim for compensation be and the same is hereby denied under the authority of Florida Statutes 440.-15(3)(b)3.a.
The uncontroverted facts show that claimant reached MMI on March 15, 1988, at which time he returned to light-duty work with Sarasota County, his employer.[2] In June 1988, employer fired claimant. Contrary to the judge’s finding that claimant testified he was either working or in jail during the 2-year period following MMI, claimant testified that he spent the first 8 months after losing his job trying to get his job back, and then was arrested and incarcerated. Accordingly, there was an approximately 8-month period after claimant was fired from his job during which he was not working, followed by the 1-year period during which he was incarcerated.
Claimant testified that neither employer nor carrier ever informed him of his entitlement to wage loss benefits and duty to perform a work search. He argued that, because of employer and carrier’s failure to advise him of the wage loss/job search information, wage loss benefits were payable for at least 3 consecutive months during a 2-year period following MMI. Employer and carrier argue on appeal:
The Compensation Order entered by the Judge of Compensation Claims can logically only be read to reflect a finding by the Judge of Compensation Claims that Sarasota County had met its statutory obligation to inform the Claimant of his job search obligations. Although that finding is not expressly set forth in the Compensation Order, it is apparent that such a finding was made by the Judge of Compensation Claims because a contrary finding would have required a further *1231 ruling on Sarasota County’s defense of inadequate job search. The Judge’s implicit ruling is consistent with, and is the only ruling that could be consistent with, the Judge’s expressly stated finding that the Claimant’s further claim for wage loss benefits is barred by Section 440.-15(3)(b)3.a., ....
Employer and carrier then argue that this implicit finding is supported by competent, substantial evidence in the form of James McDonald’s testimony. McDonald, a representative of employer, testified as follows with regard to the wage loss forms:
Q. [Claimant’s attorney] Let me ask you this: Have you ever sent Mr. Bass any wage loss forms or any information about his duty to look for work in any way?
A. Myself, no, personally.
Q. Do you have any record in your file that he was requested to look for work or that he should file wage loss forms?
A. From our carrier.
Q. Is it in your file?
A. It should be.
Q. Do you have your file with you? A. No, not the complete file.
Q. Do you have anything in your file here today that you can show that someone sent him wage loss forms?
A. Not to show that they sent them.
During employer and carrier’s cross-examination of Mr. McDonald, the following colloquy took place:
Q. [Mr. Causey, employer and carrier’s attorney] Mr. McDonald, is it correct that Hewitt, Coleman is the servicing agent on this account?
A. Yes, it is.
Q. And is it true it’s their responsibility to send the — note the wage loss verification—
MR. LANCASTER [Claimant’s attorney]: Object. I don’t care whose responsibility it is. That’s a leading question and has nothing to do with the Direct Examination.
[[Image here]]
THE JUDGE: He testified they have a servicing agent that does all this stuff. It’s perfectly apparent from the pleadings you’ve stipulated to so let’s not belabor the point.
MR. LANCASTER [Claimant’s attorney]: It is a very important point—
THE JUDGE: Why is it a very important point?
[Claimant’s attorney]: — because they have a statutory obligation to send out the wage loss forms.
THE JUDGE: I know they do, Mr. Lancaster, and he doesn’t know whether they did or not.
MR. CAUSEY [Employer and carrier’s attorney]: And that’s all I’m asking.
THE JUDGE: And that’s what hé testified to. If you’d listen to the answers to your own questions, this would be as clear to you as it is to me. Now can we proceed?
These excerpts from Mr. McDonald’s testimony, as well as the judge’s own express reaction to that testimony, show that Mr. McDonald’s testimony does not constitute competent, substantial evidence that would support a finding, implicit or explicit, that employer or carrier either advised claimant of his entitlement to wage loss benefits or sent him job search information. The law is settled that a work search is not a prerequisite to entitlement to wage loss benefits if the employer/earrier fails to advise the claimant of his obligation to conduct a work search. Alberta v. American Freight Systems, 565 So.2d 378 (Fla. 1st DCA 1990).
Because claimant established a prima fa-cie case of entitlement to wage loss benefits from November 15, 1990, to February *1232 6, 1991,[3] and because employer and carrier failed to present competent, substantial evidence that claimant was not entitled to such benefits due to the application of section 440.15(3)(b)3.a., Florida Statutes (1987), we reverse the appealed order and remand with directions that wage loss benefits be awarded for this period. See Vann v. St. Anthony’s Hospital, 550 So.2d 533 (Fla. 1st DCA 1989).
REVERSED AND REMANDED.
MINER and WEBSTER, JJ., concur.

. That section provides:
3. The right to wage-loss benefits shall terminate:
a. As of the end of any 2-year period commencing at any time subsequent to the month when the injured employee reaches the date of maximum medical improvement, unless during such 2-year period wage-loss benefits
shall have been payable during at least 3 consecutive months.

. The industrial injury resulted in a 10.7 percent permanent impairment to claimant's body as a whole.

. The record includes copies of job search forms for this period. Claimant testified that his attorney gave him these wage loss forms.